Case 1:21-cv-04004-FB-CLP    Document 1-1    Filed 07/15/21    Page 1 of 22 PageID #: 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------------X

CASCADE 553 LLC, EMPIRE ID CONSTRUCTION    :    **SUMMONS**
CORP., and ISAC DEUTSCH,    :
   :
   :    Index No.: _____
              Plaintiffs,    :
   :    Date Index No.
     v.    :    Purchased: _____
   :
VESCOM SYSTEMS, LLC,  and TB ENGINEERED    :
DESIGNS, LLC,    :    Plaintiffs designate venue in
   :    Kings County based on the
             Defendants.    :    Plaintiffs' residence.

-------------------------------------------------------------------------X

**TO THE ABOVE-NAMED DEFENDANTS:**

     **YOU ARE HEREBY SUMMONED**, to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       May 26, 2021

                          FREEBORN & PETERS LLP

                          By:    *Jon Schuyler Brooks*
                              Jon Schuyler Brooks
                        1155 Avenue of the Americas
                        26th Floor
                        New York, NY 10036
                        *Attorney for Plaintiffs*

TO:    Vescom Systems, LLC
       100 Shames Drive, Suite 1
       Westbury, New York 11590

       TB Engineered Designs, LLC
       316 Fairhaven
       Tracys Landing, Maryland 20779

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---------------------------------------------------------------------------X

CASCADE 553 LLC, EMPIRE ID CONSTRUCTION     :
CONSTRUCTION CORP., and ISAC DEUTSCH,     :    Index No.: _____
        :
      Plaintiffs,     :
        :    **VERIFIED COMPLAINT**
     v.     :
        :
VESCOM SYSTEMS, LLC, and TB ENGINEERED     :
DESIGNS, LLC,     :
        :
      Defendants.     :

---------------------------------------------------------------------------X

Plaintiffs Cascade 553 LLC ("Cascade"), Empire ID Construction Corp. ("Empire"), and

Isac Deutsch ("Deutsch"; and together with Cascade and Empire, "Plaintiffs"), by and through

their undersigned counsel, as and for their Verified Complaint against Vescom Systems, LLC

("Vescom") and TB Engineered Designs, LLC ("TBED"; together with Vescom, "Defendants"),

allege as follows:

## <u>NATURE OF THE CASE</u>

1. This case involves breaches of various construction agreements, gross negligence,

and/or professional malpractice by Defendants that occurred during the design and development

of a residential condominium project (the "Project") located at 859 Myrtle Avenue, Brooklyn,

New York (the "Building"). The parties refer to the Building in the various construction

documents as "Building F."

2. These acts and/or omissions by Defendants—Project subcontractor (Vescom) and

its recommended structural engineer (TBED)—resulted in the death of a construction worker,

and a complete, lengthy, shutdown of the Project by the Department of Buildings ("DOB").

3. Cascade, the owner of the Building, retained Empire to construct the Building.

Empire, in turn, retained Vescom, to design, fabricate, and install the Building's superstructure—

the bearing walls and structural steel—which are the most crucial structural components of the Building.

4. At the recommendation of Vescom, Empire retained TBED to perform the engineering and construction services for the Project. Cascade paid TBED's invoices.

5. Vescom informed Plaintiffs that Vescom could not hire TBED directly.

6. Unfortunately, Defendants' work on the Project came to a catastrophic end. On November 21, 2018, one of Vescom's workers was crushed to death when a prefabricated section of an exterior steel wall—being moved by a Vescom worker—fell onto him.

7. That wall section fell on the worker while a Vescom worker used an unauthorized forklift to move a steel wall section on the then top of the Building during dangerous high-wind conditions.

8. This accident is a direct result of Defendants' failure to adequately safeguard the Project, despite their contractual and/or professional responsibility to do so.

9. Indeed, by November 28, 2018, the New York City Department of Buildings (the "DOB") issued a stop-work order on the Project and, later, issued penalties and fines against Empire and its principal, Isac Deutsch.

10. Later, a DOB-mandated peer review determined that Defendants' work had various defects, which Plaintiffs were forced to remedy at their own expense.

11. Defendants' actions constitute breaches, errors, and omissions that caused Plaintiffs to incur significant repair and delay damages, reputation damages, costs, DOB and the Office of Administrative Trials and Hearings (OATH) fines and penalties, and attorneys' fees.

12. Plaintiffs now seek to recover from Defendants all these damages.

## THE PARTIES

13. Cascade is a limited liability company organized and existing under and by virtue

2

of the laws of the State of Delaware, authorized to do business in the state of New York, with its principal place of business in New York. Cascade was, at all times relevant, the fee owner of the real property as improved by the Building.

14.     Empire is a corporation organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in New York. Empire was, at all times relevant, the general contractor of the Project.

15.     Isac Deutsch is a resident of New York. Mr. Deutsch is the principal of Empire and Cascade's representative for the Project.

16.     Vescom is a limited liability company organized and existing under and by virtue of the laws of the State of New York, with a principal place of business in New York.

17.     TBED is a limited liability company organized and existing under and by virtue of the laws of the State of Maryland, and is authorized to conduct business in New York.

## **FACTS**

**A.      Vescom Contracts with Empire to Build the Superstructure for the Project.**

18.     On or about February 19, 2015, Cascade and Empire entered into an agreement under which Cascade agreed to construct six residential structures—which later became known as Buildings A through F—according to the relevant construction documents. (*See* February 19, 2015 contract, attached as Exhibit 1.).

19.     The General Contract makes clear it is not Empire's responsibility to ensure the construction plans comply with applicable laws. Rather the General Contract provides that responsibility rests solely with the subcontractor, Vescom.

20.     Specifically, the General Contract provides, in relevant part:

> [Empire] is not required to independently ascertain that the plans and specifications are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities—***as all such***

3

> *compliance shall be determined by the appropriate licensed professionals*
> *selected and engaged by [Empire] for such purpose, and [Empire] may rely on*
> *the advice and opinions of such licensed professional [sic] on these matters*.

*Id.* at ¶ 9.2 (emphasis added).

21. The General Contract further provides Empire was to obtain insurance for the Project, and it was Cascade's responsibility to bear that expense.

22. Specifically, the General Contract provides, in relevant part:

> [Empire] shall purchase and maintain, at [Cascade's] sole cost and expense, property insurance to the full and insurable value of the project, in case of a fire, vandalism, malicious mischief or other peril *or instances of damage that may occur*.

*Id.* at ¶ 2.3 (emphasis added).

23. Complying with their contractual obligations, Empire acquired the required insurance on behalf of both Empire and Cascade, and Cascade paid the premiums on that policy.

24. On November 8, 2018, Empire and Vescom entered into a subcontract agreement pursuant to which Vescom was to construct the superstructure for the Project. (*See* "Subcontract Agreement," attached as Exhibit 2.)

25. The Subcontract Agreement requires Vescom to provide engineering services for the Project and to prepare shop drawings for the Project. *Id.* ¶¶ 3.2 & 19 (at pp. 3 and 7).

26. The Subcontract Agreement provides Vescom would be paid $5,319,850 for its services (the "Vescom Services"). *Id.* ¶ 2 at p.3.

27. The Vescom Services include, among other things:

   a) Design, fabrication, & *installation* of bearing walls made of *cold form steel framing components & structural steel*. All Shear walls per approved drawings….
   b) Fabrication and *installation* of Vescom Composite decking System, truss girders, Joist, frames & concrete stop.
   c) Fabrication & *installation of structural steel beams, columns, Steel embedded component, Shear walls posts, concrete stop*.
   d) Fabrication & *installation of steel frame balconies*.

> e)  Steel pan Fire stairs ready for mesh and concrete, for entire building including elevator motor room
> f)  ***All cranes or any other lifting equipment to lift material required for the work***
> g)  ***all OSHA protection Required***

*Id.* at Part I at p. 2 (emphasis added).

> Ex. A to the Subcontract Agreement further defines the Vescom Services to include:

> Fabrication and ***Installation*** of the structural & Balcony steel . . .
> Fab. & ***Install*** Deck . . .
> Fab. & ***Install*** Required Headers . . .
> Fab. & ***Install*** steel Joist . . .
> Fab. & ***Install*** Wall Panels . . .

*Id.* at Ex. A (emphasis added).

28.   The Subcontract Agreement also requires Vescom to obtain—and at all times maintain—liability insurance "as reasonably required by" Empire. *Id.* ¶ 33 at p.9.

29.   Under the Subcontract Agreement, Vescom warranted its work would be in a first-class workmanlike manner, and acknowledged it was given complete access to the Property in order to ensure compliance with that highest standard of required workmanship.

30.   Specifically, the Subcontract Agreement provides:

> The [Vescom Services] shall be completed in a ***first class workmanlike manner*** in accordance with this Agreement and to produce the intended results as required by [Cascade]. *Id.* ¶ 1 at p.5 (emphasis added).

> [Vescom] represents and accepts that it has been ***given an opportunity to and has visited, inspected, surveyed, and tested all applicable areas of the Project where the [Vescom Services] shall be performed, including the surrounding areas, to determine, verify, and document all existing conditions or other potential conditions which could impact the [Vescom Services]***, and has requested from, and consulted with, any necessary parties, and been provided with, all information concerning the [Vescom Services], Project, and its conditions so as to properly perform the [Vescom Services] within the Contract Price and in accordance with the Project Schedule. *Id.* ¶ 2.1 at p.3 (emphasis added).

31.   Vescom accepted full responsibility for the successful and safe completion of the Project, and agreed to bear the expense for any defects or damages caused by Vescom or its

5

subcontractors.

32.     To that end, Vescom made the following promises in the Subcontract Agreement:

*[Vescom] shall be solely responsible for the continuous protection of [the Vescom Services]*, including materials and equipment, and utility lines. *Id.* ¶ 4 at p.5 (emphasis added.)

*If the [Vescom Services are] not in conformance with this Agreement, [Vescom] shall promptly correct the [Vescom Services], at its cost, within Fourteen (14) working days after receiving written notice from [Empire].* [Vescom] shall be responsible for additional testing, inspections, and compensation for services and expenses of [Empire] and/or the [Cascade] made necessary by defective [Vescom Services]. *Id.* ¶ 5 at p.5 (emphasis added).

*[Vescom] shall comply with all codes, laws, rules, regulations, and legal requirements, including the applicable building code, relating to the [Vescom Services] and the Project*. *Id.* ¶ 13 at p.6 (emphasis added).

[Vescom] shall be solely responsible for all construction means, methods, techniques, sequences, and procedures of the [Vescom Services]: . . . *[Vescom] shall be responsible for the safety of visitors to the Site, invitees, and agents and employees of [Vescom] and subcontractors. . . . [Vescom] shall be responsible for the Safety of the Work Area*. *Id.* ¶ 15 at p.6 (emphasis added).

*In the event that any of the [Vescom Services] is defective or damaged as the result of [Vescom's] or any of its subcontractors' actions, the [Vescom] shall promptly repair or replace as required all such defective or damaged [Vescom Services] at its own expense*. *Id.* ¶ 26 at p.8 (emphasis added).

33.     Vescom likewise promised to indemnify Empire, Cascade, and their principals from all damages, costs, fines, and attorneys' fees incurred related to Vescom's performance on the Project.

34.     Specifically, the Subcontract Agreement provides, in relevant part:

To the fullest extent permitted by law, and in addition to the Standard Indemnity set forth in Exhibit "D", attached hereto, *[Vescom] shall defend, indemnify, and hold [Empire] and [Cascade], their affiliates and subsidiaries, and Additional Insureds, and their respective officers, directors, shareholders, principals, members, partners, employees, and agents (collectively, the "Indemnitees") harmless from and against all liability, penalties, fines, violations, injury, judgment, lawsuits, damage, economic loss, costs, expenses, including reasonable attorneys' fees, claims, demands, and actions of any nature whatsoever which arise out of or are connected with the*

6

*performance of the [Vescom Services] by [Vescom] or its subcontractors*.

*Id.* ¶ 32 at p.9.

Exhibit D to the Subcontract Agreement continues:

Indemnity. In consideration of the Contract Agreement. and to the fullest extent permitted by law, *[Vescom] shall defend and shall indemnify, and hold harmless, at [Vescom]'s sole expense, [Empire], all entities [Empire] is required indemnify and hold harmless, [Cascade], and the officers, directors, agents, employees, successors and assigns of each of them from and against all liability or claimed liability for bodily injury or death to any person(s), and for any and all property damage or economic damage. including all attorney fees. disbursements and related costs. arising out of or resulting from the [Vescom Services] covered by this Contract Agreement to the extent such [Vescom Services] was performed by or contracted through the [Vescom] or by anyone for whose acts [Vescom] may be held liable, excluding only liability created by the sole and exclusive negligence of the Indemnified Parties*. This indemnity agreement shall survive the completion of the [Vescom Services] specified in the Contract Agreement.

*Id.* at Ex. D, Art. 1.0 (emphasis added).

35. Moreover, Vescom acknowledged that Cascade, as owner, was an intended third-party beneficiary of the Subcontract Agreement:

Nothing herein shall be deemed to create any contractual right or privity for [Vescom] to pursue any claim against [Cascade]. *[Cascade] is solely a third-party beneficiary with respect to the [Vescom Services] performed by [Vescom]*. *Id.* ¶ 52, p. 11 (emphasis added).

**B.  Vescom Encourages Empire to Hire TBED as the Engineer of Record for the Project.**

36. TBED is, or was during the timeframe relevant in this action, in the business of providing engineering and design services for the construction and development of building structures.

37. Vescom recommended to Plaintiffs that TBED serve as the engineer of record for the Project for the purposes of completing the engineering and construction work required in connection with the Vescom Services.

7

38. Vescom represented to Plaintiffs that Vescom could not retain TBED directly.

39. On September 25, 2015, Empire retained TBED to serve as the engineer of record for the Project, including the Building. (*See e.g.*, "TBED Proposal," attached as Exhibit 3.)

40. At all times relevant hereto, and through at least November 28, 2018, TBED was the engineer of record for the Project.

41. TBED's contractual role for the Project included, among other things:

- Serving as *Engineer of Record*
- "*Engineering design of the named building structures*"
- "Review, coordinate, and refine the current structure set, including details and *lateral load systems*"
- "*Project Coordination*:
  - With the architect;
  - With shop-drawing detailer for the wall and floor systems.
  - With the building permit expediter
  - *With the DOB*.
- "*Review Building Submittals as E.O.R.*"
- "*Participate in resolving usual and ordinary construction issues as they arise*."
- "18 project related visits, included."
- "Carry $1,000,000 *Professional Errors and Omissions Insurance*."

*See id.* at 2–3 (emphasis added).

**C.** **A Vescom Worker is Crushed to Death During Installation of the Superstructure and the DOB Issues a Stop-work Order and Penalties.**

42. Defendants chose a system for the Building that involved prefabricating a majority of the steel superstructure elements off-site, then assembling and installing them on-site.

43. On Wednesday, November 21, 2018—the day before Thanksgiving—tragedy struck. Upon information and belief, a prefabricated steel wall panel fell off a forklift on the then-highest level of the building, crushing a Vescom worker to death.

44. Upon information and belief, the DOB had approved and authorized Defendants to use only a *specific make and model* forklift for the Project (the approved model was on premises at the time of the incident)—and not the make and model used by Defendants involved

8

in the incident that killed the worker.

45. Upon information and belief, the fatal incident occurred during high-wind conditions. Photographs of the scene appear to reflect that both the prefabricated steel wall section and the forklift tipped over.

46. Upon information and belief, on the day of the incident, Vescom's onsite third-party contractor crane operators for the Project refused to use the crane due to the high-wind conditions.

47. Defendants—to the exclusion of Cascade and/or Empire—assumed the sole obligation to ensure the installation of the superstructure was performed in an approved, safe, and first-class workmanlike manner.

48. Furthermore, Vescom had control of the Project during construction/installation of the superstructure. For example, among other things, Vescom had a contractual obligation to ensure the safety of all workers and the work area for the Project. *See* Ex. B. ¶ 15, p.6.

49. In addition, TBED had a contractual obligation, as engineer of record, to participate in and resolve usual and ordinary construction issues. *See* Ex. C ¶2, p.2.

50. Hours after the incident, DOB issued violations to Empire for failure to safeguard workers and issued a full stop-work order for the Project.

51. DOB thereafter levied fines and penalties against Empire and its principal, Mr. Deutsch.

52. After the DOB issued its work stop order, Defendants abandoned their construction and installation work on the Building.

**D.** **A DOB-ordered Peer Review Reveals Additional Flaws in Defendants' Work.**

53. After the fatality, the DOB required a peer review of the Project.

9

54.     Structural engineers, Titan Engineers ("Titan") performed the peer-review of Defendants' work on the Project.

55.     On about May 13, 2019, Titan issued a report containing its findings in connection with its peer review. At this point, the Building was in mid-construction.

56.     The Titan peer review found several errors relating the Building's compliance with the New York City building code. For example, certain portions of the Building failed to meet deflection serviceability requirements and certain steel beams were holding loads beyond their strength capacity.

57.     In addition, Titan found there were various inconsistent or incomplete areas of the structural drawings, as well as discrepancies between the architectural and mechanical drawings.

58.     The Titan review also recommended the Engineer of Record review the findings and revise the building design, including any necessary reinforcement of the portions of the building already built, prior to construction resuming.

59.     Later, Titan prepared revised building designs for use at the Building.

60.     The DOB later accepted the findings in the Titan peer review and required Plaintiffs to make all changes, repairs, and modifications required by the Titan peer review.

**E.     Plaintiffs Suffer Significant Damages due to Defendants' Grievous Breaches**.

61.     Defendants' improper acts, omissions, and/or breaches of their respective contracts—including those that caused the fatal incident, and those disclosed in the Titan peer review—required significant repairs to the Project (the "Remedial Work").

62.     The Remedial Work included, among many other things, the preparation of new shop drawings, and the retrofitting and installation of new bearing walls.

63.     Plaintiffs already have incurred or will incur costs of at least $500,000 for the

10

Remedial Work, and these costs continue to accrue.

64.     To effectuate the Remedial Work, some previous work had to be removed, redone, and reinstalled. For example, Plaintiffs have expended or will expend approximately $700,000 redoing and reinstalling certain concrete work.

65.     Moreover, Defendants' breaches, unworkmanlike conduct, and the resulting DOB stop-work orders set back the Project by at least two and a half years. As of the date of this filing, the DOB has still not lifted its partial stop-work order on the Project and only lifted the full-stop order in order to allow Empire to perform the Remedial Work.

66.     The costs to complete construction of the Project have increased. Construction costs Plaintiffs have had or will have to pay to new subcontractors to complete the Project are approximately $250,000 higher than what Plaintiffs originally agreed pay Defendants.

67.     Due to the ongoing project delay, Cascade and Empire have faced increased costs from various vendors who are no longer accepting the prices they agreed to three years ago.

68.     As a result of Defendants' breaches and unworkmanlike conduct, Cascade and Empire have also been forced to pay $1,700,000 in interest charges and payments on the Project's construction loans because the Project had to be extended.

69.     Because the Project has gone well over its expected completion date, Cascade was also forced to extend the Project's insurance policies, with initial costs in the amount indicated to be at least $700,000.

70.     Plaintiffs have paid Titan approximately $160,000 for its peer review and revised building drawings.

71.     Moreover, Cascade has been unable to realize the expected benefit of the Project and has lost significant profits as a result of Defendants' breaches.

11

72.     Cascade and Empire have both suffered significant reputational harm in the construction industry due to the massive delay in the completion of the Building.

73.     Plaintiffs have incurred significant attorneys' fees litigating the DOB and OATH fines, as well as preparing this complaint, all as a result of Defendants actions.

74.     Finally, DOB and OATH levied fines and fees against Empire and Mr. Deutsch, in an amount totaling $75,000.

75.     Defendants' respective breaches of the Subcontract Agreement and the TBED Proposal, as well as their improper acts and/or omissions have caused or will cause Plaintiffs to suffer damages already known to be in excess of $4,000,000, and those damages, costs, and fees continue to rise.

**First Cause of Action**
(Breach of Contract – All Plaintiffs against Vescom)

76.     Plaintiffs repeat and reallege all prior paragraphs as if set forth at length herein.

77.     By failing to properly design, fabricate, and/or install the Building's Structural Systems as set forth above, Vescom breached its contractual obligations in the Subcontract Agreement.

78.     Vescom also breached the Subcontract Agreement by failing to perform its work on the Project with reasonable care, and in an appropriate, suitable, and workmanlike manner in accordance with all accepted industry standards and practices, and in compliance with all applicable laws, codes, regulations, and other applicable governmental requirements.

79.     Vescom further breached its contractual obligations by, among other things, allowing installation of the superstructure to occur in highly dangerous conditions, ultimately resulting in the death of one the workers on the Project.

80.     The Titan peer review uncovered yet further breaches: Vescom failed to properly

12

design the Building's superstructure. Specifically, certain portions of the Building failed to meet deflection serviceability requirements and certain steel beams carried loads exceeded their strength capacity, requiring repair, replacement, and reinforcement.

81.     Furthermore, Vescom's breaches caused extensive delays while other professionals and contractors repaired damages caused by Vescom, all at Cascade's and Empire's cost and expense.

82.     The DOB issues fines and penalties against Empire and Mr. Deutsch as a result of Vescom's breaches, errors, and omissions.

83.     In the Subcontract Agreement, Vescom agreed to indemnify Cascade, Empire, and Mr. Deutsch (as principal of Empire) for all damages, costs, DOB penalties and fines, and attorneys' fees, relating to Vescom's performance of the Vescom Services.

84.     Moreover, the Subcontract Agreement provides that Cascade is an intended third-party beneficiary of the Vescom Services.

85.     Nonetheless, Vescom failed to indemnify Plaintiffs for their damages incurred due to its many breaches and omission, and is thus in further breach of the indemnity provisions of the Subcontract Agreement.

86.     After the DOB issued its stop-work order on November 28, 2018, Vescom abandoned the Building and voluntarily ceased all work on the Building, and thus has not corrected its substandard and negligent superstructure design and installation, as it is required to do under the Subcontract Agreement.

87.     Plaintiffs have complied with and performed all of their obligations under the Subcontract Agreement and/or the General Contract in connection with the Project.

88.     Due to Vescom's breaches of the Subcontract Agreement, and due to DOB's stop-

13

work order that Vescom directly and proximately caused by its contractual breaches, Vescom caused the injuries and damages to Plaintiffs described above.

89.     Plaintiffs' damages include but are not limited to delay damages, repair damages, reputational damages, DOB fines and penalties, and attorneys' fees in an amount to be determined at trial but not less than $4,000,000, plus costs, interests, attorneys' fees, and disbursements.

**Second Cause of Action**
(Breach of Contract – Empire against TBED)

90.     Empire repeats and realleges all prior paragraphs as if set forth at length herein.

91.     Cascade retained Vescom to design, fabricate, and install the Building's superstructure, specifically its bearing walls and structural steel.

92.     At the behest and recommendation of Vescom, Empire retained TBED in 2015 to perform engineering services in connection with the Project. Cascade paid TBED's invoices.

93.     TBED agreed in the TBED Proposal with Empire to perform engineering services in connection with the Subcontract Agreement, the Project, and the Building. These TBED Services include but are not limited to: preparation of drawings, serving as Engineer of Record for the Project, engineering the design of Project, Project coordination, participating and resolving "usual and ordinary construction issues," conducting project visits, and obtaining $1,000,000 Professional Errors and Omissions Insurance. (See e.g., Ex. C.)

94.     After the DOB issued its stop-work order, TBED abandoned the Building and voluntarily ceased all relevant work on the Building.

95.     As set forth above, TBED breached its contractual obligations to by allowing the construction and installation of the superstructure to occur in highly dangerous conditions, ultimately resulting in the death of one of Vescom's workers.

14

96.     The Titan peer review uncovered yet further breaches: TBED failed to properly design the Building's superstructure. Specifically, certain portions of the Building failed to meet deflection serviceability requirements and certain steel beams carried loads exceeded their strength capacity, requiring repair, replacement, and reinforcement.

97.     TBED's breaches caused extensive delays while other professionals and contractors repaired damage caused by TBED, to Empire's cost and expense.

98.     TBED has not corrected its work, and, despite its obligation to carry Professional Errors and Omissions Insurance, has failed to indemnify Empire for the costs and expenses as a direct result of its substandard and negligent superstructure design and installation.

99.     Because of TBED's breaches of its contractual obligations, and due to the DOB's stop-work order that TBED directly and proximately caused, Empire has been damaged.

100.     As a result of TBED's material breaches of the TBED Proposal, Empire has been damaged. The damages include but are not limited to delay damages, reputation damages, and repair damages in an amount to be determined at trial but not less than $4,000,000, plus costs, interests, and disbursements.

**Third Cause of Action**
**(Professional Malpractice – Plaintiffs against TBED)**

101.     Plaintiffs repeat and reallege all prior paragraphs as if set forth at length herein.

102.     Empire retained Vescom to design, fabricate, and install the Building's superstructure, specifically its bearing walls and structural steel.

103.     Vescom served as the subcontractor responsible for the development and installation of the superstructure of the Project—the Vescom services.

104.     In September 2015, Empire retained TBED to perform engineering services—the TBED Services—in connection with the Project. Cascade paid TBED's invoices.

15

105.    At all times relevant hereto, and through at least November 28, 2018, TBED was the engineer of record for the Project.

106.    TBED owed Plaintiffs, the beneficiaries of their professional services, a duty of care to complete the Project in a good and workmanlike manner.

107.    TBED accepted and undertook the responsibility to perform said services in a good and workmanlike manner pursuant to and in accordance with accepted practices and standards of the engineering profession, so that the installation of the Building's structural components would be in a structurally sound workmanlike state—and certainly free from accident and catastrophe.

108.    TBED breached this duty of care. Specifically, TBED failed to perform in a good and workmanlike manner or pursuant to and in accordance with accepted practices and standards of the engineering profession. Instead, TBED deviated from such accepted practices and standards.

109.    TBED performed their services carelessly, negligently, and contrary to all such standards, as well as applicable laws, including applicable building codes and the AISC Code.

110.    As set forth above, installation of the superstructure at the Building occurred in dangerous and deadly conditions—causing an "abrupt, cataclysmic occurrence" directly causing the death of one of the Project's workers and a stop-work order from the DOB.

111.    The DOB later issued fines and penalties against Mr. Deutsch and Cascade as a result of the fatal incident.

112.    The Titan peer review uncovered yet further breaches: TBED failed to properly design the Building's superstructure. Specifically, certain portions of the Building failed to meet deflection serviceability requirements and certain steel beams carried loads that exceeded their

16

Case 1:21-cv-04004-FB-CLP   Document 1-1   Filed 07/15/21   Page 18 of 22 PageID #: 23

strength capacity, requiring repair, replacement, and reinforcement.

113.    TBED thus committed professional malpractice in their performance of the TBED Services in connection with the Project.

114.    Because of TBED' professional malpractice, and due to the DOB's stop-work order that TBED directly and proximately caused, TBED caused the injuries and damages to Plaintiffs described above, all of which were reasonably foreseeable.

115.    The injuries include, but are not limited to delay damages, repair damages, reputation damages, costs, and DOB fines and penalties. Plaintiffs have suffered damages in an amount to be determined at trial but not less than $4,000,000, plus costs, interests, DOB fines and penalties, and disbursements.

**Fourth Cause of Action**
**(Quantum Meruit – by Cascade against TBED)**

116.    Cascade repeats and realleges all prior paragraphs as if fully set forth herein.

117.    Cascade compensated TBED, in good faith, for their services in completing the Project.

118.    During all relevant times, TBED accepted payments from Cascade and TBED retained the benefit of same.

119.    Cascade directly provided TBED with payment upon the expectation that they would design, fabricate, and install a usable, legal, defect-free, and structurally sound superstructure for the Building.

120.    But as set forth above, TBED failed to properly install the superstructure, and instead installed the superstructure in a dangerous and structurally unsound manner, which resulted in a fatality and millions in of dollars of damages.

121.    Cascade is thus entitled to the return of any payments made to TBED, which

17

Case 1:21-cv-04004-FB-CLP   Document 1-1   Filed 07/15/21   Page 19 of 22 PageID #: 24

TBED did not earn and is thus are not entitled to retain.

122.    Because of the foregoing, Cascade is entitled to a money judgment against TBED in the amount to be determined at trial but not less than $105,000, plus costs, interests, and disbursements.

### Fifth Cause of Action
### (Unjust Enrichment – By Cascade against TBED)

123.    Cascade repeats and realleges all prior paragraphs as if fully set forth herein.

124.    TBED, by its conduct as described above, has profited and enriched itself unjustly at the expense and to the detriment of Cascade.

125.    TBED should not be permitted in equity and good conscience, to retain the benefit of the payments Cascade made to them in connection with the Project, when its work and services were inadequate, shoddy, fatal, and outright negligent, and cost millions of dollars to correct and redo, and which resulted in damages, costs, fines and penalties, and attorneys' fees.

126.    Because of the foregoing, Cascade is entitled to a money judgment against TBED in the amount to be determined at trial but not less than $105,000 plus costs, interests, and disbursements.

**WHEREFORE**, Plaintiffs respectfully requests judgment against Defendants as follows:

A.      On the First Cause of Action for breach of contract, awarding Plaintiffs monetary damages against Vescom in an amount to be determined at trial, but in no event less than $4,000,000, plus costs, interests, attorneys' fees, and disbursements;

B.      On the Second Cause of Action for breach of contract, awarding Empire monetary damages against TBED in an amount to be determined at trial, but in no event less than $4,000,000, plus costs, interests, and disbursements;

C.      On the Third Cause of Action for professional malpractice, awarding monetary damages to Plaintiffs against TBED in an amount to be determined at trial, but in no event less than $4,000,000, plus costs, interests, and disbursements;

D.      On the Fourth Cause of Action for quantum meruit, awarding monetary damages

Case 1:21-cv-04004-FB-CLP    Document 1-1    Filed 07/15/21    Page 20 of 22 PageID #: 25

to Cascade against TBED in an amount to be determined at trial, but in no event less than $105,000 plus costs, interests, and disbursements; and;

E.      On the Fifth Cause of Action for unjust enrichment, awarding monetary damages to Cascade against TBED in an amount to be determined at trial, but in no event less than $105,000 plus costs, interests, and disbursements;

F.      Granting Plaintiffs such other and further relief against Defendants as the Court deems just and proper, including Plaintiffs' reasonable attorneys' fees and the costs and disbursements of this action.

Dated: New York, New York
May 19, 2021

FREEBORN & PETERS LLP

By:      *Jon Schuyler Brooks*

Jon Schuyler Brooks
1155 Avenue of the Americas
26th Floor
New York, NY 10036
*Attorney for Plaintiffs*

19

## VERIFICATION

STATE OF NEW YORK    )
                            )
COUNTY OF KINGS      )

**ISAC DEUTSCH,** being duly sworn, deposes and says:

I am the principal of Plaintiff Empire ID Construction Corporation, which is a Plaintiff in this proceeding. I have read the allegations contained in the foregoing Verified Complaint as they relate to Empire ID Construction and to Isac Deutsch, in my individual capacity, and all these allegations are true to my own knowledge, except as to the allegations stated to be upon information and belief, and as to those allegations, I believe them to be true.

**ISAC DEUTSCH**

Sworn to before me this
_19_ day of May 2021

Notary Public

DAVID KATZ
Notary Public, State of New York
No. 01KA6099314
Qualified in Kings County
Commission Expires Sept. 29, 2023

20

Case 1:21-cv-04004-FB-CLP    Document 1-1    Filed 07/15/21    Page 22 of 22 PageID #: 27

## VERIFICATION

STATE OF NEW YORK        )
                                )
COUNTY OF KINGS          )

**ABRAHAM BRACH,** being duly sworn, deposes and says:

I am the principal of Plaintiff Cascade 553, LLC, a Plaintiff in this proceeding. I have read the allegations contained in the foregoing Verified Complaint as they relate to Cascade 553, LLC, and all these allegations are true to my own knowledge, except as to the allegations stated to be upon information and belief, and as to those allegations, I believe them to be true.

 

**ABRAHAM BRACH**

Sworn to before me this
____ day of May 2021

CHAYA ABELESZ
NOTARY PUBLIC, State of New York
No. 01AB6139487
Qualified in Kings County
Commission Expires January 09, 20__

21